IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN K. BUSTER,<br><br>    Plaintiff,<br><br>  v.<br><br>COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF MECHANICS BANK, MECHANICS BANK SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN, MECHANICS BANK,<br><br>    Defendants.<br>                                                            / | No. C 16-01146 WHA<br><br>**ORDER DENYING MOTION TO DISMISS** |

**INTRODUCTION**

In this action for payment of benefits pursuant to an executive retirement plan under the Employee Retirement Income Security Act of 1974, equitable estoppel, and reformation of a contract, defendants move to dismiss plaintiff's second and third claims. For the reasons stated below, defendants' motion is **DENIED**.

**STATEMENT**

From 2004 to 2012, plaintiff Steven K. Buster served as president and chief executive officer of defendant Mechanics Bank. Buster participated in several of Mechanic Bank's retirement plans including the Mechanics Bank Supplemental Executive Retirement Plan ("SERP"). In 2008, Mechanics Bank froze the accrual of new benefits pursuant to the SERP, and adopted a separate Executive Retirement Plan ("ERP"), in which Buster also participated.

1    In 2012, Buster learned that Diane Felton, chair of Mechanic Bank's board of directors,
2 wanted to terminate his employment, and Dan Albert, chairman of the compensation committee
3 presented Buster with a "Confidential Retirement and Release of All Claims" (the
4 "Agreement"). The Agreement provided that on his retirement date, Buster would release of all
5 claims against the bank and its related entities. The release provided, in pertinent part (Huss
6 Decl., Exh. 4 at ¶ 1(a) (emphasis in original))[1]:

> [Executive] understands and agrees that . . . this Agreement extends to and fully releases the Bank and any and all Releasees from all claims of every nature and kind, known or unknown, suspected or unsuspected, vested or contingent, past or present, arising from or attributable to the Bank or any Release including but not limited to claims arising under . . . the Employee Retirement Income Security Act . . . any other civil rights law, attorney fee law, or Executive benefits law, and any other law or tort. The only *exceptions* to this release are claims for workers' compensation, claims for unemployment compensation, and claims for indemnification.

The Agreement also provided for a lump-sum payment to Buster of one million dollars designated as "Retirement Pay," as well as a separate payment of $1.8 million under the ERP, and a one-year severance payment of just over one million dollars, for a total payment of $3.8 million. The Agreement made no mention of the SERP. Mechanics Bank presented Buster with the Agreement on November 19, 2012, and gave him until November 23 to sign it.

The complaint alleges that Buster "was expressly informed by Felton that his benefits under [the SERP, his 401(k) Plan, and his pension plan] would be unaffected by the Agreement, though Felton knew that the provisions of the Agreement were broadly drafted" (Amd. Compl. ¶ 20). Allegedly relying on that representation, Buster signed the Agreement on November 21.

That evening, after Buster signed the Agreement, Garrett Lambert, senior vice president and treasurer of Mechanics Bank, sent an email to Daniel Albert, chairman of the Directors Compensation Committee, quantifying the amount of benefits Buster accrued under his pension,

---

[1] Buster's complaint relies on several documents, including the Agreement, but does not allege their specific contents. Defendants' request that the Court take judicial notice of those documents (Dkt. No. 50). A "court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Buster submits many of the same documents in support of his opposition. Defendants' request for judicial notice is **GRANTED**.

2

SERP, and ERP plans. Buster was copied as a recipient on that email. The email made no mention of the Agreement (Louderback Decl., Exh. 4).[2]

On December 31, 2012, the date of his retirement, Buster signed an appendix executing the release as stated in the Agreement (Huss Decl., Exh. 4, Appendix A at ¶ d).

In May 2015, Buster sent an inquiry to Judy Ditchey the director of human resources at Mechanics Bank asking for an estimate of his retirement benefits. Ditchey responded stating, *inter alia*, that Mechanics Bank had no obligation to pay any benefits under SERP due to the release in the Agreement. Later that month, outside counsel for Mechanics Bank reiterated that position. In July 2015, Buster's counsel asserted a formal claim for benefits under the SERP, which claim was denied. Buster's counsel appealed, which appeal was also denied (Amd. Compl. ¶¶ 23–24).

Buster commenced this action in March 2016. Defendants moved to dismiss Buster's initial complaint, and after Buster amended his complaint, they withdrew their motion. Buster's first amended complaint alleges three claims for relief: (1) denial of benefits under ERISA, (2) equitable estoppel, and (3) reformation of the Agreement. Defendants now move to dismiss the second and third claims of the amended complaint. This order follows full briefing, oral argument, and a supplemental letter filed by defendants.

**ANALYSIS**

Section 502(a)(3) of ERISA provides that a civil action may be brought:

> [b]y a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. 1132(a)(3).

"Appropriate equitable relief" refers to "those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity."

---

[2] Buster's complaint alleges that he received the Agreement on November 21, the same day he signed it, but the letter from his counsel appealing defendants' benefits determination, which Buster appended in support of his opposition, states that he received the Agreement on November 19 (Louderback Decl., Exh. 9). This is confirmed in the summary of Buster's deposition submitted by his counsel (Dkt. No. 60).

3

*Cigna Corp. v. Amara*, 563 U.S. 421, 439 (2011) (citations omitted) (emphasis in original). Section 502(a)(3) does not, however, "authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an ERISA plan." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 253 (1993) (emphasis and modifications in original)).

Here, all agree that no violation of any ERISA fiduciary duties occurred. That is because the SERP constituted a "top-hat plan," that covered only a select group of highly-compensated employees. *See* 29 U.S.C. 1101(a). ERISA exempts such plans from several requirements, namely, parts 2, 3, and 4 of Title I of ERISA, which address participation, vesting, funding, and fiduciary duties. 29 U.S.C. 1051(2), 1081(a)(3), 1101(a)(1). All agree that the administrator of a top-hat plan is exempt from ERISA's fiduciary duties. Moreover, all agree that the terms of the SERP are unambiguous. Buster does not seek any equitable relief as to the SERP, rather, he seeks equitable estoppel and reformation regarding *the Agreement*, which defendants have interpreted as waiving benefits under the SERP.[3]

Defendants argue that Buster failed to identify any ambiguity in the Agreement that could give rise to a claim for equitable remedies. Defendants further argue that the equitable remedies available under Section 502(a)(3) are available only with regard to misrepresentations about a *plan* document and cannot be extended to statements about the Agreement. Defendants also argue that Section 502(a)(3) cannot apply in the context of a top-hat plan, inasmuch as the fiduciary duties of ERISA do not extend to such a plan. Each of defendants' arguments fail, as now discussed.

### 1. AMBIGUITY IN THE AGREEMENT.

Defendants argue that Buster has failed to plead facts showing that he reasonably relied on Felton's interpretation of the Agreement because, so they argue, the Agreement was

---

[3] The origin of the term "top-hat plan" remains unclear. It does not appear in the statutory language, though it does appear in the regulations governing ERISA. *See, e.g.*, 26 C.F.R. § 35.3405-1T at a-21. Both sides agree that the SERP constituted a top-hat plan and is therefore exempt from certain requirements under ERISA.

4

unambiguous. The pertinent term of the Agreement provided that it "fully release[d] the Bank and any and all Releasees from all claims . . . arising under . . . the Employee Retirement Income Security Act" — but it made *no mention whatsoever* of the SERP.

It is plausibly ambiguous whether the term "claims arising under the Employee Retirement Income Security Act" encompassed claims for benefits from a plan *governed by* ERISA, as defendants now contend. *Felton's alleged statement unambiguously disclaiming that scope exacerbated that ambiguity.* Moreover, the hurried nature of the execution of the Agreement (it was presented to Buster on November 19, 2012, just one day before Thanksgiving, and due to be signed on November 23, a Sunday), further justified Buster's reliance. Defendants' argument is unpersuasive.

The Lambert email, which detailed the extent of Buster's pending SERP benefits, was sent *after* Buster already signed the Agreement, so he could not have relied on it when signing. Nevertheless, it tends to corroborate the story fed to Buster by Mechanics Bank. That email lends further plausibility to the allegation that Felton informed Buster the Agreement had no effect on his SERP benefits.

In short, on the present record, we have a strong showing that Mechanics Bank cheated Buster out of his SERP benefits by telling him the release would *not* affect his pension yet, once the ink was dry, the bank reversed field and insisted that the release had done just that.

### 2. STATEMENTS ABOUT THE AGREEMENT.

Defendants contend that the equitable relief that Buster seeks is not available because he does not allege an interpretation of a *plan* provision, citing *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945 (9th Cir. 2014), as support. There, the plaintiff sought equitable estoppel or reformation on the basis that his ERISA plan administrator erroneously informed him that he would receive benefits upon retirement, although he had released his claim to benefits several years prior. The plan discovered its error and ceased payment. The plaintiff sought equitable estoppel preventing the fund from reverting to its corrected understanding of the record.

*Gabriel* held equitable relief unwarranted because the initial letter stating the plaintiff could receive benefits did "not provide an interpretation of the Plan, but merely provide[d] the

5

erroneous information that [the plaintiff was] entitled to benefits . . . upon retirement." *Id.* at 959. In reaching that conclusion, the *Gabriel* court recited prior holdings prohibiting the use of equitable estoppel in circumstances that would "contradict written plan provisions" in order to "protect the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan." *Id.* at 956 (citations omitted). Thus, our court of appeals applied a rule that equitable estoppel could not be used to give effect to "oral statements that contradict or supersede the terms of an ERISA plan" but could "give effect to interpretations of ambiguous plan provisions." *Ibid.* (citations omitted). Moreover, *Gabriel* noted that equitable estoppel could only apply in "extraordinary circumstances," which generally required "a promise that defendant reasonably should have expected to induce action or forbearance on the plaintiff's part." *Id.* at 956–57.

Defendants myopically read *Gabriel* to limit equitable estoppel to interpretations of ambiguous terms in the plan document as against any other statement relating to a plan. But *Gabriel* does not reach so far. That decision addressed concerns about applying equitable estoppel to enforce plan terms in a way the plan never intended — a protection in place for actuarial purposes. That consideration is not in play here.

True, our case does not involve an interpretation of the SERP. Neither, however does Buster seek to equitably enforce a statement modifying the terms of the SERP. Rather, Buster seeks equitable estoppel as to Felton's alleged representation about the effect and scope of his separation agreement. That is, Buster had clear-cut rights under the SERP. Those are not in question. What is in question is whether a stand-alone, one-time, private separation agreement waived those rights. Under the plain language of Section 502(a)(3), a court can authorize appropriate equitable relief to enforce the terms of a plan.

At oral argument, defendants identified *Greany v. Western Farm Bureau Life Insurance Co.*, 973 F.2d 812 (9th Cir. 1992), as the strongest support for their motion, although the decision occupied only one sentence in each of their opening and reply briefs. Defendants cite that decision for the proposition that equitable estoppel under Section 502(a)(3) are only available where "representations are made to the employee involving an oral interpretation of

6

the plan." *Id.* at 821. *Greany*, like *Gabriel*, considered the distinction between mistaken statements about the availability of benefits under the plan notwithstanding unambiguous plan terms, wherein the remedy sought would "enlarge [the plaintiff's] rights against the plan beyond what he could recover under the unambiguous language of the plan itself." *Id.* at 822. That is not our case. Buster seeks to recover *precisely* what is owed to him under the SERP.[4]

Defendants attempt to place Buster between a rock and a hard place. In his initial complaint, Buster sought the same equitable relief he seeks now, but under state contract law. Defendants moved to dismiss on ERISA-preemption grounds. In lieu of responding to the motion, Buster amended his complaint to assert claims under ERISA Section 502(a)(3), and defendants now assert that ERISA does not provide a remedy for misrepresentations about the Agreement, inasmuch as it is a contract separate from the SERP.

In other words, defendants contend Buster's claims for equitable relief are too related to the SERP to proceed under state law, but they are too removed from the SERP to proceed under ERISA. Under the defense view, a plan administrator could cheat a retiree out of his due with lulling misrepresentations about a cleverly-worded waiver and then spring a contrary strict construction on him with impunity. That would turn Section 502(a)(3) on its head.

This order holds that "appropriate equitable relief" under ERISA Section 502(a)(3) may extend to remedy inequitable conduct pertaining to a supposed waiver of plan rights.

### 3. TOP-HAT PLAN.

No decision in our circuit has addressed whether Section 502(a)(3) can apply in the context of a top-hat plan because top-hat plans are exempted from certain substantive requirements of ERISA, including the fiduciary responsibilities. Every decision from outside our circuit that has encountered the question has determined or assumed that Section 502(a)(3)

---

[4] At oral argument, counsel for Buster pointed to *Colaco v. Asic Advantage Simplified Employee Pension Plan*, No. 13-0972, 2015 WL 5655465 (Sept. 24, 2015) (Judge Paul S. Grewal), as the best support for Buster's case. That decision laid out several factors for determining whether a plan beneficiary had executed an effective waiver. *Id.* at *4–5. In their supplemental letter filed after oral argument, defendants acknowledge that the factors identified in *Calaco* may be relevant to Buster's claim for benefits (not challenged here), but it does not address the issues at play on this motion (Dkt. No. 65). This order agrees. Nevertheless, as stated, the effect of any waiver of Buster's claims to benefits under an ERISA plan must be considered in light of equitable remedies authorized by Section 502(a)(3).

7

*can* extend to a top-hat plan, although none has analyzed the problem thoroughly. *See, e.g.*, *Peters v. Lincoln Electric Co.* 285 F.3d 456, 467-68 (6th Cir. 2002); *In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996); *Straney v. Gen. Motors Corp.*, No. 06-12152, 2008 WL 162554, at *3 (E.D. Mich. Jan. 16, 2008) (Judge Bernard A. Friedman); *Cramer v. Appalachian Regional Healthcare, Inc*., No. 11-49, 2012 WL 996583, at *4 (E.D. Ky 2012) (Judge Karen K. Caldwell); *Hay Group, Inc. v. Bassick*, 571 F. Supp. 2d 845, 849 (N.D. Ill. 2008) (Judge Joan B. Gottschall); *Callahan v. Unisource Worldwide, Inc.*, 451 F. Supp. 2d 428 (D. Conn. 2006); *Koening v. Waste Management, Inc*. 76 F. Supp. 2d 908 (N.D. Ill. 1999) (Judge Christopher F. Droney). Our defendants argue that the prevailing trend is inconsistent with the law of this circuit and contend that Section 502(a)(3) requires a breach of an ERISA-imposed duty as a predicate to relief.

The plain language of Section 502(a)(3) does not support defendants' interpretation. By its terms, that section authorizes "appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." Our defendants contend they need not make payments required by the terms of the SERP in reliance on the Agreement. Plainly, to the extent equitable relief is otherwise available, Section 502(a)(3) authorizes the appropriate relief to enforce the terms of the SERP.

Defendants' arguments primarily rest on a narrow understanding of *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), and *Gabriel v. Alaska Elec. Pension Fund,* 773 F.3d 945 (9th Cir. 2014). Those decisions discussed the availability of equitable remedies under Section 502(a)(3) in the context of information provided by a fiduciary. Neither decision *required* a fiduciary breach. Each merely addressed the defendant as the plan fiduciary as appropriate under the circumstances. Nothing in those decisions excluded the possibility that the administrator of a top-hat plan could escape the reach of equitable remedies under Section 502(a)(3) simply because it was exempt from the higher fiduciary standard of care.

Defendants also cite *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1178 (W.D. Wash. 2015) (Judge Ricardo S. Martinez), which stated, "[t]he determination of fiduciary status is a threshold issue for a § 502(a)(3) claim and is to be determined by the Court as a matter of law."

8

*Monper* cited *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004), as support for that position, which in turn cited *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). *Varity* did not impose such a requirement. Rather, *Varity* considered whether the statements giving rise to the claim for equitable relief were made by the defendant in its capacity as an employer or as a plan administrator. Section 502(a)(3) could only apply in the latter circumstance. Thus, *Varity* considered the threshold question of whether the defendant acted as a plan fiduciary *rather than as an employer*.

*Mathews* also examined whether the defendant's alleged misrepresentation occurred in the discharge of its duties as a plan fiduciary, rather than to its role as an employer. The defendant argued that its communications "addressed employment matters with some relevance to pension benefits." *Mathews*, 362 F.3d at 1179. Because the statement, "when taken as a whole and in context," constituted the activities of a plan administrator (and therefore a plan fiduciary), Section 502(a)(3) applied.

None of *Varity*, *Mathews*, or *Monper* considered the applicability of Section 502(a)(3) to the esoteric circumstance of a plan administrator that lacked fiduciary duties by way of the top-hat exemption. Thus, this order holds that the fiduciary requirement set forth in those decisions is intended to distinguish between a plan administrator and an employer and cannot be stretched to distinguish between run-of-the-mill plan administrators and the peculiar exception of top-hat plan administrators. Notably, the decisions cited above that *did* consider top-hat plans all post-dated *Varity*.

Defendants adopt Buster's contention that Felton's alleged representation about the continued availability of Buster's benefits under the SERP "would have been fiduciary" but for the exemption for top-hat plans (Defs.' Reply at 9). This order accepts that characterization for the purposes of this motion but notes it is a dispute that may need to be resolved on the merits.

This order holds, consistent with the uniform trend of decisions addressing Section 502(a)(3) in the context of a top-hat plan, that equitable remedies thereunder are available for a breach of the general good faith standard of contract law by the plan administrator.

9

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss Buster's second and third claims is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 26, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE