United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN K. BUSTER, | No. C 16-01146 WHA |
| Plaintiff, | |
| v. | |
| COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF MECHANICS BANK, MECHANICS BANK SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN, and MECHANICS BANK, | **ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT** |
| Defendants. | |

**INTRODUCTION**

In this action under the Employee Retirement Income Security Act of 1974 for benefits pursuant to an executive retirement plan, equitable estoppel, and contract reformation, plaintiff moves for summary judgment on his first claim for relief (Dkt. No. 84) while defendants move for summary judgment on all three (Dkt. No. 69). Both motions are **DENIED**.

**STATEMENT**

Plaintiff Steven K. Buster was president and chief executive officer of defendant Mechanics Bank from 2004 to 2012 and participated in Mechanics Bank's Supplemental Executive Retirement Plan ("SERP"). In 2008, Mechanics Bank froze the SERP and adopted the Executive Retirement Plan ("ERP"), in which Buster also participated. Sometime between September and November of 2012, Diane Felton, chair of the board of directors, and Dan

Albert, chairman of the compensation committee, informed Buster his employment would be terminated (Dkt. Nos. 69 at 3, 84 at 2). On November 19 or 21 of 2012, Albert gave Buster a "Confidential Retirement Agreement and Release of All Claims" ("Release Agreement"). The Release Agreement provided (Dkt. No. 55-3 at 2):[1]

> [T]his Agreement extends to and fully releases the Bank and any and all Releasees from all claims of every nature and kind, known or unknown, suspected or unsuspected, vested or contingent, past or present, arising from or attributable to the Bank or any Releasee including but not limited to claims arising under . . . the Employee Retirement Income Security Act . . . any other civil rights law, attorney fee law, or Executive benefits law, and any other law or tort. The only <u>exceptions</u> to this release are claims for workers' compensation, claims for unemployment compensation, and claims for indemnification.[2]

The Release Agreement also provided that, regardless of whether Buster signed the release, Mechanics Bank would pay him $1,033,504.00, the equivalent of his salary and bonus in 2012, as well as an additional $1,799,855.69 pursuant to the ERP (*id.* at 1). The Release Agreement further stated, "Provided that this Agreement is accepted and signed by [Buster] on or before noon on Friday, November 23, 2012, [Mechanics] Bank will . . . pay [Buster] the gross amount of one million dollars ($1,000,000.00), less authorized and required deductions" ("Million-Dollar Payment") (*id.* at 3). The Release Agreement did not mention the SERP.

Buster signed the Release Agreement on November 21, 2012, after "Felton assured [him] that his benefit under [his 401(k), pension plan, and the SERP] would be unaffected by the [Release] Agreement" (Dkt. Nos. 69 at 7–8, 84 at 4). Later that evening, senior vice president and treasurer Garrett Lambert copied Buster on an email to Albert that quantified Buster's benefits accrued under his pension plan, the SERP, and the ERP. The email did not mention the Release Agreement. (Dkt. Nos. 69 at 11, 84 at 4). On December 14, vice president and finance manager Tom Leong emailed Buster to inform him that Mechanics Bank's actuary had "completed the final benefit statements for [his] Pension and SERP based upon [his] pending retirement on December 31, 2012" (Dkt. No. 79 at 5–6).

---

[1] The Release Agreement has been judicially noticed (Dkt. No. 67 at 2 n.1).

[2] Importantly, the Release Agreement encompassed "past or present" claims, but Buster's claim for SERP benefits did not arise until well after he signed the Release Agreement.

2

In May 2015, Buster asked Judy Ditchey, director of human resources, for an estimate of his retirement benefits. Ditchey replied — and counsel for Mechanics Bank later confirmed — that, pursuant to the Release Agreement, Mechanics Bank did not owe Buster any SERP benefits (Dkt. Nos. 69 at 12–13, 32 at 6). On July 1, 2015, Buster submitted a formal claim for SERP benefits. On September 28, 2015, the compensation committee of the board of directors ("Committee") denied Buster's claim. Buster timely appealed, and the Committee denied the appeal on December 30, 2015 (Dkt. Nos. 69 at 13, 32 at 6).

Buster filed this action in March 2016. A previous order denied Mechanics Bank's motion to dismiss Buster's second and third claims for relief (Dkt. No. 67). The parties then filed the instant motions. This order recognizes that the undersigned judge, proceeding as he would have in a regular ERISA action, requested these motions. That was a misjudgment, as this is not a regular ERISA action. That said, the motions must be **DENIED**.

**ANALYSIS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact. FRCP 56(a). A genuine dispute of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A court must not weigh evidence or make credibility determinations in resolving motions for summary judgment. *Id.* at 255.

1. **EQUITABLE ESTOPPEL.**

Equitable estoppel requires that (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014). Mechanics Bank claims Buster must also show (5) extraordinary circumstances, (6) "that the provisions of the plan at issue remained ambiguous such that reasonable persons could disagree as to their meaning or effect," and (7) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan. *Id.* at 957. Thus, Mechanics Bank contends, Buster cannot prevail if he does not identify

3

an "ambiguous plan provision" (Dkt. No. 69 at 15).  *See Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821–22 (9th Cir. 1992); *Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1081–82 (N.D. Cal. Mar. 24, 2014) (Judge Yvonne Gonzalez Rogers).

The requirements Mechanics Banks cites are meant to prevent "oral amendments to or modifications of employee plans" and "vindicate ERISA's requirement that plan terms be written and amended only in a manner consistent with the statute." *Greany*, *supra*, at 822; *Groves*, *supra*, at 1082.  In other words, the requirements prevent plaintiffs from "contradict[ing] written plan provisions."  *See Gabriel*, *supra*, at 955–56.  Here, however, Buster does not challenge a plan provision.  The parties *agree* the SERP's terms are unambiguous (*see* Dkt. No. 67 at 4).  Buster seeks equitable relief, not as to the SERP, but as to the *Release Agreement* that purported to waive benefits unambiguously owed under the SERP. Contrary to Mechanics Bank's assertion, equitable estoppel is not limited to cases where the plaintiff alleges an ambiguous plan term "as against any other statement relating to a plan" (*see id.* at 6).  The additional requirements Mechanics Bank cites are therefore inapplicable.[3]

Mechanics Bank cites *Puretest Ice Cream, Inc. v. Kraft, Inc.*, 806 F.2d 323, 325 (1st Cir. 1986), for the proposition that a plaintiff cannot use a defendant's alleged prior oral statement to create an ambiguity and then introduce the same statement to resolve the ambiguity in the plaintiff's favor (Dkt. No. 69 at 16).  But that is not our situation.  Felton's alleged oral statement did not *create* the required ambiguity but rather "*exacerbated*" the ambiguity *already existing* in the term "claims arising under [ERISA]."  *Puretest* is therefore inapposite.

Mechanics Bank also cites as support *Gonda v. The Permanente Med. Grp., Inc.*, No. 11–cv–01363–SC, 2015 WL 678969 (N.D. Cal. Feb. 17, 2015) (Judge Samuel Conti), noting that "Buster's release here is . . . substantially identical to the release in *Gonda*" (Dkt. No. 69 at 17).  In *Gonda*, the parties signed a settlement agreement similar to the Release Agreement in this case.  *Gonda*, *supra*, at *2.  In a subsequent lawsuit asserting, *inter alia*, a claim for

---

[3] In his opposition, Buster correctly points out that the additional requirements Mechanics Bank cites are inapplicable, but incorrectly contends a six-factor test for whether a waiver of ERISA claims is knowing and voluntary applies instead (Dkt. No. 79 at 8–9).  That test is appropriately discussed within the context of Buster's claim for SERP benefits, not within the context of equitable estoppel.

4

disability benefits under an ERISA-governed plan, the plaintiff proffered extrinsic evidence of the parties' conduct to show he did not knowingly and voluntarily waive his ERISA claims. *Id.* at *5. The district court found "the waiver in the Settlement Agreement [was] unambiguous" and "clearly waive[d] all . . . ERISA claims against the released parties," so the plaintiff could not "use extrinsic evidence to contradict the terms of the Settlement Agreement." *Id.* at *9.

*Gonda* is not binding authority, and its persuasive value is neutralized by an important distinction from this case. The language in *Gonda* apparently favorable to Mechanics Bank and described above came within the context of determining whether the settlement agreement was a "knowing and voluntary waiver." In contrast, whether the settlement agreement was ambiguous did not come up in the immediately preceding discussion of the plaintiff's equitable estoppel claim, which was rejected on other grounds. Importantly, the *Gonda* court explicitly noted that, had the estoppel argument been successful, it would have prevented the court from reaching the question of whether the settlement agreement was a knowing and voluntary waiver of ERISA claims. *Id.* at *4. Mechanics Bank's attempt to apply *Gonda*'s "knowing and voluntary waiver" reasoning to the distinct issue of equitable estoppel is unpersuasive.

At minimum, there remain factual disputes over whether (1) Felton or Mechanics Bank knew the Release Agreement covered Buster's future SERP claims; (2) Felton intended that Buster sign the Release Agreement based on her oral representation to the contrary, or acted so that Buster has a right to believe she so intended; (3) Buster did not know the Release Agreement covered his future SERP claims; and (4) Buster relied on Felton's representation to his injury. *See Gabriel*, *supra*, at 955. Summary judgment is therefore improper as to Buster's claim for equitable estoppel.

### 2. CONTRACT REFORMATION.

"[R]eformation is proper only in cases of fraud and mistake." *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012). Under a fraud theory, "a court may reform a contract when (1) one party seeks reformation, (2) that party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and (3) the party seeking reformation was justified in relying on the other party's misrepresentations."

5

*Ibid.* Here, genuine disputes of material fact remain as to the elements of Buster's reformation claim. As stated, the parties dispute whether Felton misrepresented the terms or effect of the Release Agreement to Buster, and whether that alleged misrepresentation induced Buster to sign the Release Agreement. Moreover, the record at this stage does not support summary adjudication of whether Buster was justified in relying on Felton's alleged misrepresentations.

Mechanics Bank argues Buster cannot establish "reasonable reliance" for several reasons. *First*, Mechanics Bank claims it would make "no sense to believe that the Bank would both obligate itself to pay $1 million in 'retirement' benefits *and* maintain an ongoing obligation to fund Buster's benefit under the SERP" (Dkt. No. 69 at 19). The intent and purpose behind the Million-Dollar Payment offered by the Release Agreement, however, are disputed. For example, Buster suggests the "plausible explanation" that "the Bank simply offered [him] $1 million in exchange for his full 2012 bonus of $530,000, his loss of anticipated 2013 earnings and, very significantly, the requirement that he provide a release of claims . . . which he otherwise had no obligation to provide" (Dkt. No. 79 at 20). Mechanics Bank's argument requires drawing inferences and making credibility determinations in Mechanics Bank's favor to resolve this dispute. This order declines to do so. *See Anderson*, *supra*, at 255.

*Second*, because Buster "is a sophisticated, highly educated and experienced business person" who "was being *fired* by the Bank," Mechanics Bank contends it is "simply not plausible to believe that [Buster] was too shy to ask the Bank to confirm in writing what Ms. Felton allegedly told him." Again, Mechanics Bank asks the Court to draw inferences from disputed facts about Buster's thoughts and motives, or to determine the credibility of Buster's narrative. Such arguments must be saved for trial. *See Anderson*, *supra*, at 255.

*Third*, Mechanics Bank points out the Release Agreement specifically stated Buster would receive other benefits, like his benefits under the ERP, but made no mention of the SERP. Mechanics Bank reasons that "items not mentioned were excluded by deliberate choice, not inadvertence." Thus, Buster was "not reasonable in relying on the purported statement of [Felton] that his SERP benefit was *not* being released" (Dkt. No. 69 at 20) (emphasis in original). Although this argument enjoys some force, it is essentially a rehash of Mechanics

6

1  Bank's argument — already rejected both here and in the previous order denying dismissal —
2  that the Release Agreement unambiguously released future claims for SERP benefits. Since the
3  Release Agreement was not unambiguous as a matter of law, whether Buster interpreted it
4  reasonably is a question that cannot be resolved at this stage.

5  *Fourth*, Mechanics Bank claims Buster's "suggestion" about the purpose of the Million-
6  Dollar Payment is "demonstrably false" because it is "directly inconsistent with the terms of the
7  [Release] Agreement itself." This, Mechanics Bank argues, "undercuts [Buster's] *credibility* on
8  other issues as well, including his testimony regarding Ms. Felton's purported statements to
9  him" (Dkt. No. 69 at 20–21) (emphasis added). Again, Mechanics Bank asks for credibility
10 determinations. This order declines to make such determinations on summary judgment. *See
11 Anderson*, *supra*, at 255.

12                    *                        *                        *

13 Possibly, Mechanics Bank's best argument would be that the lead-in language of the
14 Release Agreement — *i.e.*, the language preceding the phrase "including but not limited to
15 claims arising under . . ." — was broad enough to encompass some or all of Buster's claims.
16 Although that broad language was qualified by the phrase "past or present," future claims could
17 separately be barred by the covenant not to sue set forth in Paragraph 9 of the Release
18 Agreement, as least insofar as such claims are "based upon events occurring prior to date [*sic*]
19 [Buster] signs this Agreement" (Dkt. No. 55-3 at 4). For purposes of this argument, it would be
20 unnecessary to tarry over the portion of the Release Agreement referencing ERISA (inasmuch
21 as that portion *follows* the phrase "including but not limited to"). This argument is not
22 sufficiently developed on the instant motion, but at trial it will be worth consideration.

23     **3.    CLAIM FOR SERP BENEFITS.**

24 Buster challenges the Committee's denial of his claim for benefits pursuant to 29 U.S.C.
25 1132(a)(1)(B) (Dkt. No. 32 at 6–7). Such decisions are reviewed *de novo* "unless the benefit
26 plan gives the administrator or fiduciary discretionary authority to determine eligibility for
27 benefits or to construe the terms of the plan," in which case the denial of benefits is reviewed
28 for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

7

The SERP provided in relevant part, "The Committee shall have the sole authority, in its discretion . . . to construe and interpret the terms and provisions of the Plan" (Dkt. No. 55-2 at 7). Buster urges a *de novo* review of the Committee's decision on the basis that "[t]he SERP document gave no power to the Committee to interpret a document outside the SERP" (Dkt. No. 84 at 12). This is a non sequitur. Regardless of whether the SERP authorized the Committee to interpret external documents, it gave the Committee "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Firestone*, *supra*, at 115. The appropriate standard of review is thus abuse of discretion.

### A.   Mechanics Bank's Motion.

Mechanics Bank moves for summary judgment on this claim on the basis that "Buster knowingly waived any and all claims arising under ERISA" (Dkt. No. 69 at 21). To determine whether a waiver of ERISA benefits was knowing and voluntary, federal courts "examine the totality of the circumstances" using a balance of non-exclusive factors including: "(1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver." *Parisi v. Kaiser Found. Health Plan Long Term Disability Plan*, No. C 06-04359 JSW, 2008 WL 220101, at *4 (N.D. Cal. Jan. 25, 2008) (Judge Jeffrey White) (citing *Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 713 & n.6 (1st Cir. 1999)); *see also Finz v. Schlesinger*, 957 F.2d 78, 82 (2d Cir. 1992).

At least three of these factors are in dispute here. *First*, as discussed, the parties dispute the clarity of the Release Agreement, especially when combined with Felton's alleged oral representation to Buster and Mechanics Bank's subsequent conduct apparently confirming that representation. *Second*, the parties dispute how much time Buster had to study the Release Agreement (Dkt. Nos. 69 at 3–4, 82 at 14, 84 at 2), which may bear on whether the waiver was truly knowing and voluntary. *Third*, the parties dispute what consideration, if any, Mechanics

Bank offered Buster in exchange for the purported waiver. These factual disputes preclude summary judgment for Mechanics Bank on this claim.

### B. Buster's Motion.

Buster also moves for summary judgment on this claim for relief, asserting the Committee abused its discretion in denying his claim for SERP benefits. The issue underlying Buster's motion is whether Mechanics Bank offered him the Million-Dollar Payment in exchange for his release of SERP benefits. Buster presents a dichotomy: Either Buster is correct that the Million-Dollar Payment was "in exchange for his . . . 2012 bonus," "his loss of anticipated 2013 earnings," and "a release of claims that might actually be in dispute given the abruptness of his termination" (Dkt. No. 84 at 13–14), or Mechanics Bank is correct that the Million-Dollar Payment was in exchange for a release of Buster's SERP benefits. If the former, Buster argues, then the Committee should have analyzed his claim for SERP benefits under the six-factor test for "knowing and voluntary" waiver and invalidated the Release Agreement because it lacked consideration in exchange for releasing SERP benefits. If the latter, then the Release Agreement was noncompliant with 26 U.S.C. 409A(3) because it accelerated payment of his SERP benefits. In that case, Buster argues, the Committee should have voided the Release Agreement because of Article IV and Section 9.6 of the SERP (*id.* at 3, 16).

Buster "[did] not develop [in his briefs] his argument regarding the Committee's flawed analysis of the six-part test," and "intends to develop this analysis" *if* both motions for summary judgment are denied (*id.* at 21 n.4). This order therefore considers only Buster's alternative contention that the Committee should have voided the Release Agreement.

Article IV of the SERP stated, "Except to the extent any provision of a Deferred Compensation Agreement is inconsistent with the requirements of Code Section 409A . . . in any case where a provision of a Deferred Compensation Agreement is inconsistent with the Plan, the Deferred Compensation Agreement shall prevail" (Dkt. No. 55-2 at 3). Nothing in the motion record or parties' briefs, however, indicates the Release Agreement was a Deferred Compensation Agreement. Article IV is therefore inapposite.

9

1    Section 9.6 of the SERP stated, "The Plan shall also be construed in a manner that is
2 consistent and compliant with Section 409A of the Code . . . Any provision that is noncompliant
3 with Section 409A of the Code is void or deemed amended to comply with Section 409A of the
4 Code." (*id.* at 12).  The parties, however, dispute the Million-Dollar Payment's purpose,
5 including whether it constituted "acceleration" of Buster's SERP benefits.  Mechanics Bank
6 denies that it did, and Buster cites no authority for the proposition that an otherwise valid
7 agreement to waive SERP benefits constitutes acceleration in violation of 26 U.S.C. 409A(3).
8 Buster claims Mechanics Bank cannot rebut the "presumption of a prohibited acceleration"
9 unless it can provide a "plausible basis" for inferring that the Million-Dollar Payment "would
10 have been paid regardless of the [SERP] forfeiture" (Dkt. No. 89 at 11).  But notwithstanding
11 Buster's bald assertion to the contrary, it is at least "plausible" that, as Mechanics Bank claims,
12 the Million-Dollar Payment was in exchange for the Release as a whole, *i.e.*, the waiver of
13 SERP benefits was a *part* of the exchange, but not its *sole* basis.

14   Buster next points to ERISA's prohibition on assignment and alienation of plan benefits
15 to show the Release Agreement could not have waived his SERP benefits.  *See* 29 U.S.C.
16 1056(d)(1).  Buster admits the SERP, as a top-hat plan, was exempt from 29 U.S.C. 1056(d)(1).
17 His argument is thus actually predicated solely on Section 9.2 of the SERP, which provided that
18 no "Participant, Beneficiary or successor in interest" shall "have any right to alienate,
19 anticipate, sell, transfer, commute, pledge, encumber, or assign any benefits or payments
20 hereunder in any manner whatsoever."  Buster acknowledges that "anti-alienation/assignment
21 provisions contained in Section 9.2 did not necessarily prevent [him] from waiving his benefit
22 [under the SERP]," but contends "Section 9.2 contains additional provisions that do serve to
23 prevent [his] waiver, at least for consideration, since it states that a participant may neither 'sell'
24 nor 'commute' the benefit" (Dkt. No. 89 at 13).  As stated, however, there remain factual
25 disputes regarding the purpose of the Million-Dollar Payment, including whether it was in
26 exchange for Buster "selling" his SERP benefits.

27   Buster also challenges the Committee's determination that he knowingly and voluntarily
28 released any claims for SERP benefits.  As stated in the context of Mechanics Bank's motion

10

for summary judgment on this same issue, whether Buster knowingly and voluntarily released such claims is a dispute that cannot be resolved on summary judgment.

Finally, Buster suggests Section 2.2(g) and Article IV of the SERP should be read together as prohibiting plan modification via any external document, like the Release Agreement, that does not expressly refer to the SERP (Dkt. No. 84 at 21).  This suggestion is baseless.  Section 2.2 of the SERP defined "Deferred Compensation Agreement" as "the separate agreement entered into between a Participant and the Company referring specifically to this Plan."  Article IV, titled "Deferred Compensation Agreement," stated:

> Each Deferred Compensation Agreement may include such additional provisions, beyond those set forth in the Plan, or different from those set forth in the Plan, as the committee may determine.  Except to the extent any provision of a Deferred Compensation Agreement is inconsistent with the requirements of Code Section 409A and the regulations thereunder, in any case where a provision of a Deferred Compensation Agreement is inconsistent with the Plan, the Deferred Compensation Agreement shall prevail.  Furthermore, the Deferred Compensation Agreement entered into with any Participant need not be identical to or consistent with the Deferred compensation Agreement entered into with any other Participant.

Nothing in either provision can be read as contemplating, let alone prohibiting, an agreement to release claims that happens to encompass claims for SERP benefits.  Since Buster has not shown as a matter of law that the Committee abused its discretion in denying his claim for SERP benefits, he is not entitled to summary judgment on this claim for relief.

## CONCLUSION

For the foregoing reasons, both motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

Dated:  November 17, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11