R. Bradford Huss (SBN 71303)
Dylan D. Rudolph (SBN 278707)
TRUCKER ✦ HUSS
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California  94111
Telephone:     (415) 788-3111
Facsimile:      (415) 421-2017
E-mail:           bhuss@truckerhuss.com
                      drudolph@truckerhuss.com

Joseph C. Faucher (SBN 137353)
TRUCKER ✦ HUSS
A Professional Corporation
633 W. 5th Street, 26th Floor
Los Angeles, California  90071
Telephone:     (213) 537-1016
Facsimile:      (213) 537-1020
E-mail:           jfaucher@truckerhuss.com

Attorneys for Defendants
COMPENSATION COMMITTEE OF THE
BOARD OF DIRECTORS OF MECHANICS BANK;
MECHANICS BANK SUPPLEMENTAL
EXECUTIVE RETIREMENT PLAN;
MECHANICS BANK, a California Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN K. BUSTER,<br><br>                    Plaintiff,<br><br>vs.<br><br>COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF MECHANICS BANK; MECHANICS BANK SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN; MECHANICS BANK, a California Corporation,<br><br>                    Defendants. | Case No.: 3:16-cv-01146-WHA<br><br>**DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT FRANK A. WISEHART**<br><br>Hon. William H. Alsup<br><br>Pre-Trial Conference Date: May 17, 2017<br>Time:  2:00 pm<br><br>Trial Date: May 22, 2017 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this Motion, Defendants seek to exclude the report and testimony of Plaintiff's retained expert witness, Frank Wisehart.

Plaintiff Steven Buster ("Plaintiff" or "Mr. Buster") disputes that he waived and released his right to receive a benefit under a Supplemental Executive Retirement Plan (the "SERP") sponsored by Defendant Mechanics Bank (the "Bank"). When his employment with the Bank terminated, Mr. Buster signed a Confidential Retirement Agreement and Release of All Claims (the "Release Agreement") that included a broad release of all claims, including, without limitation, claims arising under the Employee Retirement Income Security Act ("ERISA"). The ultimate issue in the case is whether the Release Agreement resulted in a waiver and release of Plaintiff's SERP benefit. In support of his position, Plaintiff has proffered the "expert" witness report of CPA Frank Wisehart. Mr. Wisehart focuses on the fact that the Bank's financial statements continued to reflect a liability equal to the amount of Mr. Buster's benefit under the SERP even after Mr. Buster signed the Release Agreement. The Bank, conversely, contends that an inadvertent failure to timely communicate the terms of the Release Agreement to the Bank's finance department resulted in its financial statements continuing to carry a liability relative to the amount of Mr. Buster's SERP benefit. Mr. Wisehart's report, and proposed testimony, ignore the *uncontroverted* evidence that the terms of the Release Agreement were not immediately communicated to the Bank's finance department, and that once they were - in 2014 - the Bank's financial statements were corrected. But this Motion is not concerned with whose version of the facts is correct. Rather, the question is whether it is appropriate to admit Mr. Wisehart's testimony on this issue. Defendants submit that it is not, as this Court's own Guidelines for Trial and Pretrial Conferences in Civil Bench Cases ("Guidelines") make clear: "Another recurring problem is the retained expert who seeks to vouch for the credibility of fact witnesses and/or to vouch for one side's fact scenario." (Guidelines, at p. 5, ¶ 13 (emphasis added).)

Trucker ♦ Huss
A Professional Corporation
One Embarcadero Center, 12th Floor
San Francisco, California 94111

1
DEFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE TESTIMONY OF PLTF'S EXPERT FRANK A. WISEHART
Case No. 3:16-cv-01146-WHA
165921.v4

Yet the very purpose of Mr. Wisehart's report and proposed testimony is to opine on what he believes is "plausible" regarding the facts of the case. He states, for example, that "… it is not plausible that the Bank overlooked writing-off Mr. Buster's SERP obligation and also inadvertently reported this obligation on its financial records that survived two independent audits and approximately twenty-two periods of internal reporting." (Report of Frank A. Wisehart, attached to the Declaration of Joseph C. Faucher ["Faucher Dec."] as Exhibit 1, p. 11.)

Mr. Wisehart has cloaked his obvious advocacy of Plaintiff's position in the garb of expert testimony. His report and testimony not only present argument in support of Plaintiff's position, they disregard entirely the testimony of the Bank's witnesses about their understanding of the effect of the Release Agreement, and what those witnesses meant when they authored certain documents. The Court can, and will, reach its own conclusions about the credibility of witnesses and the effect of documents and communications on the issues before it. Mr. Wisehart's commentary about what is and is not "plausible," and whether certain facts are inconsistent with an understanding by Bank personnel that Mr. Buster waived and released his SERP benefit when he signed the Release Agreement, is not a proper subject of expert testimony.

## II.     THE PROFFERED TESTIMONY

Plaintiff served his Expert Witness Disclosure on February 28, 2017. (Faucher Dec., Exh. 1.) His sole designated, retained expert witness is CPA Frank A. Wisehart. A summary of his proposed expert opinions states "Based on my experience, expertise, and the information reviewed herein, the activities of, and disclosures by Mechanics bank [sic] with respect to a Supplemental Executive Retirement Plan obligation owed to Mr. Buster are inconsistent with the assertion that the benefit was no longer due." (Faucher Dec., Exh. 1, p. 1.) But Mr. Wisehart's report fails to acknowledge uncontroverted facts. For example, his report ignores that the Bank's financial statements do not refer to any specific amount of SERP benefit attributable to Mr. Buster by name; but he did acknowledge this fact in his deposition:

> Q. Is it your understanding that nowhere in the financial reports of Mechanics Bank, when it refers to the liability with respect to the SERP, that Mr. Buster is identified by name?
> A. Which financial statements?
> Q. Any financial statements.

2

DEFS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE TESTIMONY OF PLTF'S EXPERT FRANK A. WISEHART
Case No. 3:16-cv-01146-WHA

165921.v4

> A. I'm aware that his name isn't mentioned in the SERP liability -- in the audited financial statements.

(*See,* Deposition of Frank A. Wisehart, p. 99, lns. 18-25; Faucher Dec., Exh. 2.)

Mr. Wisehart's report also completely ignores the *undisputed* evidence that the Bank's finance department personnel were not made aware of the terms of the Release Agreement until at least late 2014, which explains why the SERP liability attributable to Mr. Buster inadvertently remained on the Bank's books and records until 2014. At his deposition, Mr. Wisehart acknowledged that is the case. For example, he admits that Thomas Leong, of the Bank's finance department, first became aware of the Release Agreement towards the end of 2014:

> Q. Are you aware of when Mr. Leong first became aware of the Release Agreement?
> A. I don't remember when Mr. Leong may have become aware of -- the first time he may have become aware of the Release Agreement, other than perhaps towards the end of the 2014, as a specific time I remember him discussing the Release Agreement.

(Wisehart Deposition, p. 53, lns. 11-17; Faucher Dec., Exh. 2.)

Mr. Wisehart also acknowledged that finance manager Garrett Lambert was not aware of the Release Agreement before the last quarter of 2014:

> Q. Are you aware of any information to indicate whether Mr. Lambert was aware of the provisions of the Release Agreement at any time prior to the last quarter of 2014?
> A. Not that I recall.

(Wisehart Deposition, p. 70, ln. 23 - p. 71, ln. 2; Faucher Dec., Exh. 2.)

Mr. Wisehart admitted that former Bank Chief Financial Officer, Clinton Chew, did not see the Release Agreement before the last quarter of 2014:

> Q. Are you aware of any information to indicate that Mr. Chew had seen the Release Agreement at any point in time, prior to the last quarter of 2014?
> A. I'm not aware, no.

(Wisehart Deposition, p. 101, lns. 22-25; Faucher Dec., Exh. 2.)

And Mr. Wisehart admits that Mr. Chew testified that the Bank's auditors, Crowe Horwath LLC, were not aware of the Release Agreement before the last quarter of 2014:

> Q. Have you seen any testimony from any source, indicating that Crowe Horwath was not made aware of the provisions of the Release Agreement at any time prior to the last quarter of 2014?

A. I believe Mr. Chew does indicate that they were not aware of it.

(Wisehart Deposition, p. 71, lns. 17-22; Faucher Dec., Exh. 2.)

Despite acknowledging that there is no evidence to indicate that Crowe Horwath LLC even knew about the Release Agreement until 2014, he opines - based on speculation - about what Crowe Horwath "would have" learned under typical circumstances. For example:

- "Based on my experience in working with audit teams, Crowe Horwath LLP *would have* asked about the nature of Mr. Buster's departure, its effect on the outlook of the bank's business going forward, and the nature of any trailing liabilities due to Mr. Buster." (Wisehart Report at 11; Faucher Dec., Exh. 1.) (emphasis added).

- "They [the Crowe Horwath auditors] *would have* conducted substantial audit procedures regarding Mr. Buster's termination and release, what the terms of that were, what the financial impact of that was." (Wisehart Deposition, p. 72, lns. 7-10; Faucher Dec., Exh. 2.)

- "And so they [the auditors] *would have* done procedures, and carefully done procedures, to try to understand what the terms and conditions of that agreement was, as it effects the financial statements as of 12/31/2012, 12/31/2013, and again, they reversed in 12/31/2014." (*Id.*, lns. 14-19; Faucher Dec., Exh. 2.)

But Mr. Wisehart *admits* there is no evidence that Crowe Horwath discussed the Release Agreement with the Bank before late 2014. Mr. Wisehart also chose to disregard testimony from the Bank's witnesses with respect to what their written communications meant - thereby effectively deciding those witnesses were not credible. For example, Mr. Wisehart responded to questions about a November 18, 2012 e-mail from Mechanics Bank's then-Chairman of the Board of Directors, Dianne Felton, to Board member Daniel Albert. Mr. Wisehart claimed this document is inconsistent with the Bank's position that it believed Mr. Buster waived his SERP benefit. That document was attached to Mr. Wisehart's deposition as Exhibit 56, and is attached to the Faucher Dec. as Exh. 3. The e-mail addresses the payments that would be made by the Bank pursuant to the Release Agreement. It states:

> We are obligated to pay by contract:
> $530,000
> 503,000
> SERP
> $1,799,855.69

An issue has arisen about what Ms. Felton meant when she wrote:

> SERP
> $1,799,855.69

The issue relates to whether Ms. Felton was referring in her e-mail to paying Mr. Buster his benefit under the SERP, or a benefit under a separate, non-qualified deferred compensation plan sponsored by the Bank - the Executive Retirement Plan or the "ERP." But it is undisputed that the dollar amount that appears in the email under the term "SERP" - $1,799,855.69 - corresponds exactly, down to the penny, to the amount of Mr. Buster's benefit under the ERP, which was paid to Mr. Buster after his termination. Mr. Wisehart acknowledged (1) that the dollar figure that appears under the term "SERP" corresponds exactly to Mr. Buster's benefit under the ERP, and that Ms. Felton testified in her deposition that the statement in her e-mail referred to his benefit due under the ERP:

> Q. Is it your understanding that the figure, 1,799,855.69, refers to the SERP?
> A. I believe that refers to his ERP.
> Q. Do you know for a fact that that was what Ms. Felton was referring to?
> **MR. LOUDERBACK:** Objection. Calls for speculation. You can answer.
> A. I believe the document speaks for itself.
> **BY MR. FAUCHER:**
> Q. Did you see or come across deposition testimony of Ms. Felton, where she was - where she discussed whether she was referring to the SERP when she referred to that figure?
> A. I do remember that, yes, sir.
> Q. What was her testimony that you recall?
> A. As I recall, she claims that - well, that was a mistake and she meant ERP there, instead of SERP.

(Wisehart Deposition, p. 39 ln. 16 - p. 40, ln. 11; Faucher Dec., Exh. 2.)

But Mr. Wisehart's report disregards Ms. Felton's testimony. His explanation:

> Q. Did you make a credibility determination with respect to Ms. Felton's testimony in that regard?
> **MR. LOUDERBACK:** Objection. Ambiguous. Vague. Argumentative. You can answer.
> **THE WITNESS:** No, sir. I believe that this document speaks for itself. It says "SERP" in here, twice.
> **BY MR. FAUCHER:**
> Q. Okay. Do you know whether the ERP was paid to Mr. Buster?
> A. I believe it was, yes, sir.
> Q. Do you have any - did you come across any evidence with respect to why Ms. Felton's e-mail to Mr. Albert did not use the term, "ERP"?

     A.     I don't know why she didn't use the term, "ERP."
     Q.     So although you say you didn't make a credibility determination, did you make a determination that Ms. Felton was, in fact, referring to the SERP, separately from the ERP, here in Exhibit 56?
     **MR. LOUDERBACK:** Objection. Vague and ambiguous. You can answer.
     **THE WITNESS:** I'm sorry. Do you mind answering - asking your question again.
     **BY MR. FAUCHER:** Well, you stated that you believe that when Ms. Felton used this language, here in Exhibit 56, SERP followed by the dollar figure, 1,799,855.69, that she was referring to two separate liabilities; is that correct?
     A.     ***I believe the document speaks for itself.*** She specifically lists each obligation on a separate line, and on a separate line, are the $530,000, $503,000 SERP - S-E-R-P, spelled out - and then the $1,800,000 on a fourth line. In addition to that, there is further evidence where she says: The contract, and SERP, are obligations of the Bank and then goes on to say: in addition, we would like to offer.
     Q.     Is the ERP an obligation of the Bank?
     A.     Yes.
     Q.     So why is it that you have disregarded Ms. Felton's testimony with respect to this document?
     A.     ***Because I believe the document speaks for itself.***

(Wisehart Deposition, p. 40 ln. 12 - p. 42, ln. 4; Faucher Dec., Exh. 2 (emphasis added).)

Having conveniently disregarded Ms. Felton's testimony about what she meant in her e-mail, and having admitted that the Bank's finance department personnel remained unaware of the terms of the Release Agreement until late 2014, Mr. Wisehart goes on to opine that "[g]iven the Board of Directors knowledge of the terms of Mr. Buster's separation, it would be inconsistent for the Board to review approximately twenty-two monthly financial statements and not correct the inclusion, or inquire about the financial reporting of, Mr. Buster's SERP benefits obligation for nearly two years." (Wisehart Report, p. 10; Faucher Dec., Exh. 1.) His ultimate conclusion/opinion is that "… based upon a reasonable degree of accounting certainty,[1] … all of the above activities, disclosures, email communications, and financial reports are inconsistent with an understanding by Mechanics Bank that the SERP obligations were no longer due and owing to Mr. Buster." (Wisehart Report, p. 11; Faucher Dec., Exh. 1.)

---

[1] At his deposition, Mr. Wisehart was asked the following question: "My question is: This term, reasonable degree of accounting certainty, where do you derive that term from?" He answered: "I believe its origins are from medical terminology, where they frequently apply that type of language. As experts, we frequently adopt that to an accounting type of opinion statement." (*See,* Wisehart Deposition, p. 92, lns. 19-24, Faucher Dec., Exh. 2.)

## III. ARGUMENT

### Mr. Wisehart's opinions are predicated on improper determinations about witness credibility and are therefore inadmissible.

Expert testimony is admissible only if the witness offers "specialized knowledge [which] will help the trier of fact to understand the evidence or to determine a fact in issue[.] " Fed. R. Evid. 702. The trier of fact is generally capable of drawing its own inferences from the available evidence with respect to witness credibility, and expert opinion is therefore unhelpful. Fed. R. of Evid. 702; *United States v. Komisaruk*, 885 F.2d 490, 494 (9th Cir. 1989) ("We have held that expert testimony cannot be offered to buttress credibility"). While Mr. Wisehart was coached well enough to avoid *admitting* in his deposition that he made a judgment about witness credibility, it is equally obvious that is exactly what he did. But Mr. Wisehart is not the arbiter of what and who is credible or plausible and it would be inappropriate for him to weigh in on those points. His testimony should be excluded in its entirety, consistent with the court's own Guidelines that a retained expert should not seek "to vouch for the credibility of fact witnesses and/or to vouch for one side's fact scenario."

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court exclude the report and testimony of Frank A. Wisehart.

DATED: April 27, 2017            TRUCKER ✦ HUSS

By: /s/ Joseph C. Faucher
R. Bradford Huss
Joseph C. Faucher
Dylan D. Rudolph
Attorneys for Defendants
COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF MECHANICS BANK; MECHANICS BANK SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN, MECHANICS BANK, a California Corporation

Charles M. Louderback, SBN 88788
Stacey L. Pratt, SBN 124892
Justin C. White, SBN 281012
LOUDERBACK LAW GROUP
44 Montgomery Street, Suite 2970
San Francisco, CA 94104
Telephone: (415) 615-0200
Facsimile: (415) 795-4775
E-Mail: clouderback@louderbackgroup.com
 spratt@louderbackgroup.com
 jwhite@louderbackgroup.com

David F. Crutcher, SBN 135407
THE LAW OFFICES OF DAVID F. CRUTCHER
4040 Civic Center Drive, Suite 200
San Rafael, CA 94903
Telephone: (415) 419-5120
Facsimile: (415) 419-5163
E-Mail: david@crutcherlaw.com

Attorneys for Plaintiff
STEVEN K. BUSTER

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN K. BUSTER,<br><br>                Plaintiff,<br><br>        v.<br><br>COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF MECHANICS BANK; MECHANICS BANK SUPPLEMENTAL EXECUTIVE RETIREMENT PLAN, MECHANICS BANK, a California Corporation,<br><br>                Defendants. | Case No. 3:16-cv-01146-WHA<br><br>**PLAINTIFF STEVEN BUSTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT FRANK A. WISEHART**<br><br>Date: May 17, 2017<br>Time: 2:00 pm<br>Location: Courtroom 8, 19th Floor<br>         450 Golden Gate Ave.<br>         San Francisco, CA<br>Judge: Hon. William H. Alsup<br>Trial Date: May 22, 2017 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Defendants' Motion in Limine No. 2[1] ("Motion") seeks the sweeping blanket preclusion of the report and testimony of Plaintiff's retained expert witness Frank A. Wisehart ("Wisehart"). Defendants' articulated basis for the exclusion is not predicated on Wisehart's credentials. Nor, is it predicated on the applicable *Daubert* motion standard as to whether the reasoning or methodology underlying his opinions are valid, or whether his opinions were properly applied to the facts at issue. Instead, the Motion focuses on cherry-picked excerpts from Wisehart's deposition in a misleading attempt to broadly paint the entirety of Wisehart's opinions as an improper attempt to vouch for the credibility of fact witnesses, or for one side's fact scenario. Defendants' blatant mischaracterizations and generalizations ignore the substance of Wisehart's report and testimony.

Defendants suggest that the Motion "is not concerned with whose version of the facts is correct." Motion, p. 1, ln. 20-21. However, this is precisely what the Motion is focused on. Defendants fault Wisehart for his interpretation of the facts and documents that Defendants questioned him about during deposition. In doing so, Defendants misuse the Motion as a vehicle to put their own spin on unfavorable evidence in advance of trial.

Because this a bench trial, the Court will be acting as both the trier of fact and the gatekeeper to ensure the reliability of expert testimony. The Court is fully capable of determining whether Wisehart's opinions will assist the trier of fact at trial and there is absolutely no need for the Court to grant this Motion *before trial*. Accordingly, Defendants' Motion should be denied.

/ / /

---

[1] Defendants did not number their two motions in limine as required by the Guidelines for Trial and Pretrial Conference in Civil Bench Cases Before the Honorable William Alsup. For ease of reference, Plaintiff refers to this Motion as Defendants' Motion in Limine No. 2.

II.     STATEMENT OF FACTS

On February 28, 2017, Plaintiff disclosed Wisehart as a retained expert expected "to testify to topics including the financial reporting obligations, accounting principles and practices for commercial banks." Declaration of Joseph Faucher in Support of Motion In Limine to Exclude Report And Testimony of Plaintiff's Expert Frank A. Wisehart ("Faucher Decl."), ¶ 3, Exhibit 1. Wisehart's twenty-two page Rule 26 report (the "Report") was attached to the expert disclosure. *Id.* The Report, which is based on Wisehart's extensive professional accounting and audit experience, set forth various conclusions and sub-conclusions. Below are some of the opinions set forth in the Report which provide insight into the Bank's audit and financial reporting processes that will assist the trier of fact in conceptualizing the magic bullet or perfect storm scenario that would be required to logically reach Bank's preposterous conclusion that the approximately $1.3 million liability relating to Plaintiff's SERP benefit was "mistakenly" maintained on its certified books and records for almost two years:

- Mechanics Bank's key management, Chief Financial Officer, and attorney also would have twice signed the formal written management representation letters certifying to its auditors, Crowe Horwath LLP, the accuracy of its financial statements and documentation about its liabilities which include the SERP obligation to SERP. *Id.,* Exhibit 1 at p. 10.
- Based on Wisehart's experience in working with audit teams, Crowe Horwath LLP would have asked about the nature of Mr. Buster's departure, its effect on the outlook of the bank's business going forward, and the nature of any trailing liabilities due to Mr. Buster. *Id.,* Exhibit 1 at p. 11.
- Given the accounting checks and balances inherent in the audit process, the amount of documentation and disclosure provided by Mechanics Bank to its auditors, the close proximity of the December 31, 2012 audit field work to Mr. Buster's retirement, and the monthly reporting of the SERP obligation by Mechanics Bank to its own key executives and Board members, it is not plausible

1  that the Bank overlooked writing-off Mr. Buster's SERP obligation and also
2  inadvertently reported this obligation on its financial records that survived two
3  independent audits and approximately twenty-two periods of internal reporting.
4  *Id.,* Exhibit 1 at p. 11.

In short, the Report contains highly relevant and useful information that will assist the trier of fact. As such, Defendants cannot establish any meaningful basis to exclude Wisehart's Report, testimony or opinions.

### III.   THE MOTION IGNORES THE RELEVANT *DAUBERT* STANDARDS

Defendants' Motion is premised on the grounds that Wisehart's testimony does not satisfy the requirements of Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). However, the Motion is a *Daubert* motion in name only, as it fails to even apply the appropriate *Daubert* analysis:

> This two-step assessment requires consideration of whether (1) the reasoning or methodology underlying the testimony is scientifically valid (the reliability prong); and (2) whether the reasoning or methodology properly can be applied to the facts in issue (the relevancy prong). *Id.* at 592–93; *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1228 (9th Cir.1998).

Defendants' glaring omission of the relevant standard is unsurprising considering that there is no legitimate basis to exclude Wisehart's testimony or report under *Daubert* or otherwise. Instead of addressing the reliability or relevance prongs under *Daubert*, Defendants simply fault Wisehart for conclusions they disagree with. Instead of analyzing the substance of the Report, the Motion focuses on isolated excerpts of deposition testimony that conflict with Defendants' own interpretation of the facts. The Motion fails to offer any legitimate basis to exclude Wisehart's testimony and Report in their entirety.

/ / /

### IV. THE MOTION IS COMPLETELY UNNCESSARY IN THE CONTEXT OF A BENCH TRIAL

As with Defendants' other Motion in Limine, this Motion is entirely unnecessary and misplaced in the context of a bench trial, where the Court's gatekeeper role to insulate the trier of fact from prejudicial evidence is of substantially less import.

> As many courts have recognized, however, "the *Daubert* gatekeeping obligation is less pressing in connection with a bench trial" where "the 'gatekeeper' and the trier of fact [are] one and the same." *Volk v. United States,* 57 F.Supp.2d 888, 896 n. 5 (N.D.Cal.1999); *see also Magistrini v. One Hour Martinizing Dry Cleaning,* 180 F.Supp.2d 584, 596 n. 10 (D.N.J.2002) ( "[W]here the Court itself acts as the ultimate trier of fact at a bench trial, the Court's role as a gatekeeper pursuant to *Daubert* is arguably less essential."); *Fierro v. Gomez,* 865 F.Supp. 1387, 1395 n. 7 (N.D.Cal.1994), *aff'd* 77 F.3d 301 (9th Cir.1996), *vacated and remanded on other grounds,* 519 U.S. 918, 117 S.Ct. 285, 136 L.Ed.2d 204 (1996), *modified on other grounds on remand,* 147 F.3d 1158 (9th Cir.1998) (concluding that <u>the better approach under *Daubert* in a bench trial is to permit the contested expert testimony and "allow 'vigorous cross-examination, presentation of contrary evidence' and careful weighing of the burden of proof</u> to test 'shaky but admissible evidence' ") (quoting *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469).

*AngioScore, Inc. v. TriReme Medical, Inc.,* 87 F.Supp.3d 986, 1016 (N.D. Cal. 2015) (emphasis added). Here, the Court is perfectly capable of excluding evidence that it deems fails to satisfy the reliability or relevance prongs at trial.

### V. THE MOTION FAILS TO INDENTIFY ANY INSTANCES WHERE WISEHART OPINED AS TO THE CREDIBILITY OF A FACT WITNESS

In the Motion's one paragraph truncated argument section, Defendants suggest that Wisehart's opinions are predicated on improper determinations about witness credibility. Here, Defendants assert that "[w]hile Mr. Wisehart was coached well enough to avoid *admitting* in his deposition that he made a judgment about witness credibility, it is equally obvious that is exactly what he did." Motion, pg. 7, lns. 9-11. The obviousness that Defendants suggest is certainly not apparent from the Motion. While Defendants may self-servingly opine as to the appropriateness of what Wisehart considered or should have considered in reaching his opinions, the Motion falls to establish a single specific instance where Wisehart vouched for the credibility of fact witnesses. Assuming, *arguendo*, that Wisehart had opined as to the credibility of a witness

00017562 v5                                     - 4 -

PLAINTIFF STEVEN BUSTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT FRANK A. WISEHART; Case no. 3:16-cv-01146-WHA

during deposition, this would still be an insufficient basis for a blanket preclusion of his Report and all his opinions.

## VI. DEFENDANTS HAVE INAPPROPRIATELY USED THE MOTION AS A VEHICLE TO PRESENT THEIR SPIN ON THE EVIDENCE TO THE COURT IN ADVANCE OF TRIAL

Instead of assessing the reliability or relevance *Daubert* prongs, the Motion is primarily used as a vehicle for Defendants to present argument supporting their interpretation of the evidence to the Court in advance of trial and thus attempt to "pre-condition" the Court to certain evidence.  For example, the bulk of the Motion is devoted to a lengthy discussion about a single November 18, 2012 email from the Bank's Chairman of the Board, Dianne Felton to the Chairman of the Compensation Committee Dan Albert.  Motion pp. 4-6; Faucher Decl., ¶ 5, Ex. 3.  The email is particularly damaging to Defendants' position, which is precisely why they have tried to preemptively put their own spin on it here in an effort to neutralize it.

Defendants somehow take umbrage with Wisehart's interpretation of the plain meaning of the language of this email.  In the Motion, Defendants' attempt to plant the seeds of a concept proffered by Ms. Felton that she intended to say "ERP" when she used the phrase "SERP," is transparent.  However, what Defendants overlook is the fact that if Ms. Felton was mistakenly referring to the ERP when she said SERP, as she testified, then she did not consider Plaintiff's SERP to be an obligation of the Bank.  This interpretation is entirely consistent with Ms. Felton's testimony that the "SERP was not in our minds active at the time" and the logical conclusion that the Bank forgot about the SERP when structuring Plaintiff's Retirement Agreement. Nevertheless, it would be appropriate for Defendants to save their arguments about such evidence for trial instead of injecting them into a motion in limine.

## VI. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court DENY Defendants' Motion in Limine No. 2 to Exclude Testimony of Plaintiff's Expert Frank A. Wisehart.

/ / /

00017562 v5 - 5 -
PLAINTIFF STEVEN BUSTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT FRANK A. WISEHART; Case no. 3:16-cv-01146-WHA

| | | |
|---|---|---|
| 1 | Date: May 5, 2017 | LOUDERBACK LAW GROUP |
| 2 | | */s/ Charles M. Louderback* |
| 3 | | Charles M. Louderback<br>Stacey L. Pratt |
| 4 | | Justin C. White<br>Attorneys for Plaintiff |
| 5 | | STEVEN K. BUSTER |

00017562 v5                                    - 6 -

PLAINTIFF STEVEN BUSTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT FRANK A. WISEHART; Case no. 3:16-cv-01146-WHA